IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Steven Johnson,                                            Case No. 3:09CV01352

        Plaintiff

       v.                                                        ORDER

J.B. Hunt Transport, Inc.,

        Defendant

        This is a diversity suit by plaintiff, Steven Johnson, against his former employer, defendant, J.B. Hunt Transport, Inc [J.B. Hunt]. Plaintiff asserts six claims under Ohio law: 1) promissory estoppel; 2) fraud; 3) intentional infliction of emotional distress; 4) negligent hiring, supervision and retention; 5) defamation; and 6) invasion of privacy.

        Jurisdiction exists under 28 U.S.C. § 1332. Pending is defendant's motion to dismiss. [Doc. 6]. For the reasons discussed below, defendant's motion is granted in part and denied in part.

**Background**

        Johnson was employed as a truck driver by J.B. Hunt, a transport company, as an at-will employee for nine months prior to his termination.

        On February 19, 2009, Johnson picked up a loan in Edison, New Jersey to transport to Circleville, Ohio. He was instructed to stop at the J.B. Hunt terminal in Columbus, Ohio. Around two o'clock that day, after completing his stop in Columbus, Johnson contacted his Fleet Manager

and stated he was en route to Circleville. The Fleet Manager then informed Johnson that he had been selected for a federally-mandated random drug test, and needed to report to the test site in Columbus. Johnson continued to Circleville, believing he was to report to the test site after completing his delivery.

Johnson alleges that when he arrived in Circleville, he was informed that he was supposed to have reported for the drug screen immediately on notification. After making the delivery, Johnson reported to the testing facility and learned that it was closed for the evening. The Fleet Manager told him that he could report the next morning. Johnson immediately picked up another load for delivery. Defendant then contacted Johnson while in transport and terminated him for failing to comply with the drug testing requirements.

Federal regulations require a driver, after receiving notification he has been selected for a random drug and/or alcohol test, to report "immediately" to the testing facility. 49 C.F.R. § 382.305(l).

Johnson alleges that J.B. Hunt knowingly made false statements to him about the requirements for completing the required testing. He also alleges that J.B. Hunt falsely accused him of being an "illegal drug user" and a "drug screen violator." [Doc. 1, at 7]. He alleges that J.B. Hunt publicized these false statements to J.B. Hunt's "employees, law enforcement officials, customers, supplier and vendors with whom Plaintiff was familiar and dealt with in his career." [Doc. 1, at 8]. He also claims J.B. Hunt "published the claimed non compliance with a reporting agency relied upon by future employers." [Doc. 1, at 7].

Johnson alleges that his firing resulted in loss of "his job position, back pay, front pay, seniority and fringe benefits including pension benefits, diminished earning capacity, loss of

2

employment opportunities and great mental and emotional stress, anxiety, humiliation and embarrassment." [Doc. 1, at 5].

Johnson filed the instant complaint on June 15, 2009, alleging claims of promissory estoppel; fraudulent or intentional misrepresentation; intentional infliction of emotional distress; negligent hiring, supervision and retention; defamation; and invasion of privacy. J.B. Hunt then filed a motion to dismiss Johnson's complaint for failure to state a claim upon which relief can be granted.

## Discussion

### Standard of Review

Under Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Plaintiff must offer "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Although the factual allegations in a complaint need not be detailed, they must sufficiently "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007); see also Twombly, supra, 550 U.S. at 553-55.

In making this determination, I am to take all factual allegations in the complaint as true, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). It is not my function, at this stage, to weigh evidence or evaluate credibility. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

### 1. Promissory Estoppel

Johnson alleges that J.B. Hunt wrongfully discharged him. Although Johnson was an at-will employee, he claims his discharge was wrongful based on the doctrine of promissory estoppel. J.B. Hunt argues that Johnson has not included allegations that support the existence of a promise, or reasonable reliance on the alleged promise and thus the claim must be dismissed.

The elements of promissory estoppel are: 1) a clear, unambiguous promise; 2) reliance upon the promise by the promisee; 3) reasonable and foreseeable reliance; and 4) the person claiming reliance is injured as a result of the reliance. *Pappas v. Ippolito*, 177 Ohio App. 3d 625, 641 (2008).

The doctrine of "at-will employment" permits termination of the employment relationship, by either side, for any lawful reason. *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 103 (1985). Promissory estoppel is, however, an exception to the employment at-will doctrine. *Id*. at 104-05.

A successful promissory estoppel claim must be based on a clear, unambiguous promise of continued employment prior to termination. *See Daup v. Tower Cellular, Inc*., 136 Ohio App. 3d 355, 563 (2000). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Stull v. Combustion Eng'g Inc*., 72 Ohio App. 3d 553, 557 (1991) (quoting RESTATEMENT (2D) OF CONTRACTS 8, § 2(1) (1981)). Courts further hold that vague assurances of future employment are not sufficient to be considered a promise. *See Welch v. Finlay Fine Jewelry Corp*., 2002 WL 206047, *3 (Ohio App.).

In *Welch*, the appellate court affirmed the trial court's dismissal of a promissory estoppel claim on facts similar to those alleged here. 2002 WL 206047, *1, *5. The employee in *Welch* was terminated for violation of a company policy prohibiting leaving an under-counter safe unlocked during business hours. *Id.*, *1. The employee alleged that, despite the stated policy, she detrimentally

4

relied on instructions from two supervisors that the safe did not have to be locked. *Id.* The court held that the employee failed to state a claim for promissory estoppel because she did not allege that the supervisor made specific representations concerning continued employment. *Id.*, *3.

Ohio law does not recognize affirmations of job security, or statements promising career advancement as a promise of future employment. *Corradi v. Soclof*, 1995 WL 322311,*3-6 (Ohio App.) (holding that employer advising the employee not to look for a new job and stating, "I have big plans for you," insufficient to constitute a promise). Nor does Ohio law recognize termination procedures within an employee handbook as constituting a sufficient promise. *Ault v. Medina Med. Investors, LLC*, 2007 WL 81853, *2 (N.D. Ohio) (holding that termination guidelines in an employee handbook did not constitute a "clear and unambiguous promise of continued employment," because the guidelines made no guarantee as to the duration of employment).

For an at-will employee to demonstrate detrimental reliance on an employer's promise, he or she must have turned down employment opportunities in reliance on a promise of future employment. *Corradi, supra*, 1995 WL 322311, *7; *O'Hare v. N. Cent. Local Sch. Dist. Bd. Of Educ*., 1988 WL 93215, *4 (Ohio Ct. App.) (finding plaintiff's bare assertion that he would have sought employment elsewhere insufficient to show detrimental reliance on the employer's promise).

Here, Johnson's complaint does not include allegations supporting the existence of a promise by J.B. Hunt. Johnson contends he relied on the assurance of his Fleet Manager "that he would be in full compliance with drug testing regulations if he took the drug screen in the morning of February 20, 2009." [Doc. 1, at 3]. As in *Welch*, Johnson's subjective belief that he would not be terminated if he followed his Fleet Manager's instruction is insufficient to form the basis of a "clear and unambiguous promise." 2002 WL 206047, *3.

Even if J.B. Hunt's representations did amount to a promise of continued employment, Johnson fails to allege sufficient facts showing he detrimentally relied on the promise. Johnson's assertion that he relied on his Fleet Manager's instructions is insufficient to show detrimental reliance for two reasons: 1) Johnson did not rely to his detriment because he had already violated the drug testing policy–by not reporting immediately to the test site–at the time the direction was given; 2) Johnson did not refrain from seeking other employment or turn down a job offer in reliance on the instruction. *See Corradi, supra*, 1995 WL 322311, *7.

Johnson has, therefore, pleaded insufficient facts to show wrongful discharge based on the doctrine of promissory estoppel.

### 2. Fraud

Johnson also alleges fraud by J.B. Hunt. To allege a fraud claim, Johnson must show:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998).

Fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Ullmo v. Gilmour Academy*, 273 F.3d 671, 678 (6th Cir. 2001). A plaintiff "must allege specifically times, places, [and] contents . . . of the underlying fraud." Ullmo, supra, 273 F.3d at 678. A plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 504 (6th Cir. 2007).

Failure to plead the elements of fraud with particularity results in a defective claim that cannot survive a motion to dismiss. *See, e.g. U.S. ex rel. Snapp v. Ford Motor Co.*, 32 F.3d 493, 502 (6th Cir. 2008).

Johnson's fraud allegations are:

> Defendant made knowing false statements, and had . . . an agenda to terminate Plaintiff once it acquired information that he had not completed the testing on the day before . . . Concealment and representations about the requirements to complete the requested testing were made falsely, with knowledge of its falsity, and/or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred.

[Doc. 1, at 4].

Johnson's fraud claim does not meet the heightened pleading standard. Johnson failed to specify: 1) the time, place, and content of the alleged misrepresentations; and 2) the fraudulent scheme of the defendants. Consequently, the fraud claim is dismissed.

### 3. Intentional Infliction of Emotional Distress

Johnson alleges a claim for intentional infliction of emotional distress [IIED]. To prove this claim, he must show:

> 1) [J.B. Hunt] either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) [J.B. Hunt's] conduct was extreme and outrageous, that it went beyond all possible bounds of decency and can be considered as utterly intolerable in a civilized community; 3) [J.B. Hunt's] actions proximately caused plaintiff's psychic injury; and 4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (1983) (internal citations and quotations omitted).

Contemporaneous physical injury is not necessary to state a claim for IIED under Ohio law. *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 373 (1983), abrogated on other grounds by *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 472 (2007).

7

The Ohio Supreme Court explained:

> It has not been enough that the defendant has acted with intention which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and let him to exclaim, "Outrageous!".

*Id*. at 374-75.

Ohio courts have stated: "[O]nly rarely will offensive conduct reach the level necessary to support a claim for IIED." *Scarabino v. E. Liverpool City Hosp*., 155 Ohio App. 3d 576, 579 (2005).

Johnson's termination under the circumstances he presents was not "extreme and outrageous," going "beyond all possible bounds of decency" so that it "can be considered as utterly intolerable."

A court rejected similar allegations in *Rogers v. Targot Telemarketing Servs*., 70 Ohio App. 3d 689, 695 (1990). There the court held plaintiff's allegations that she was falsely promised continued employment with the intention of causing her to detrimentally rely on the assurances were insufficient to qualify as extreme and outrageous behavior.

Courts have found behavior significantly more extreme than J.B. Hunt's insufficient to allege an IIED claim. *See Bukta v. J.C. Penney Co.*, 359 F. Supp. 2d 649, 674-75 (N.D. Ohio 2004) (holding that employer's insulting and humiliating actions towards employee, causing "chronic psychiatric disability", including panic attacks and anxiety failed to establish that employer's conduct was extreme and outrageous); *White v. Honda of Am. Mfg., Inc*., 191 F. Supp. 2d 933, 954-55 (S.D. Ohio 2002) (holding that employer's termination of employee who had cancer, because she allegedly violated employer's rule that required dismissal of any employee who could not work for twelve

consecutive months was not extreme and outrageous conduct); *Baab v. AMR Serv. Corp.*, 811 F. Supp. 1246, 1270 (N.D. Ohio 1993) (holding that co-worker's display of photographs of scantily clad women and placement of pornographic sex toys in plaintiff's locker were not actions intolerable in a civilized society); *Surry v. Cuyahoga Cmty College*, 149 Ohio App. 3d 528, 537-38 (2002). (holding that a supervisor who belittled plaintiff about his age and called him a "dinosaur" and a "relic," coupled with the employer firing plaintiff and filing a criminal proceeding against him, is not outrageous enough to sustain a claim for IIED).

Additionally, conclusory allegations that Johnson suffered severe emotional distress without any supporting facts, is insufficient as a matter of law to state a claim for IIED. *Neff v. Standard Fed. Bank*, 2007 WL 2874794, *8 (S.D. Ohio) (citing *Twombly, supra*, 550 U.S. at 555). Johnson merely conclusively asserts that the Fleet Manager's conduct was so outrageous and beyond all possible bounds of decency and such that no reasonable person could be expected to endure. Johnson fails to allege facts supporting this conclusion.

Consequently, Johnson's IIED claim is dismissed because the alleged behavior is not extreme and outrageous, and the complaint alleges insufficient facts.

### 4. Negligent Hiring, Supervision and Retention

Johnson claims J.B. Hunt was negligent in hiring, supervising and retaining its "supervisory staff and management." [Doc. 1, at 6]. To prevail on a claim of negligent hiring, supervision or retention, a plaintiff must establish: 1) an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of such incompetence; 4) the employee's act or omission causing the plaintiff's injuries; and 5) the employer's negligence in hiring, supervising or

retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.*, 112 Ohio App. 3d 724, 739 (1996).

Additionally, a plaintiff must prove that the employee's acts were "reasonably foreseeable" by the employer. *Jevack v. McNaughton*, 2007 WL 1461171, *5 (Ohio App.) (citing *Armbruster v. Hampton*, 2006 WL 2527979, *5 (Ohio App.)). An act is reasonably foreseeable only "if the employer knew or should have known of the employee's propensity to engage in similar criminal, tortuous, or dangerous conduct." *Id.*, *5 (quoting *Armaly v. Wapakoneta*, 2006 WL 1976191, *11 (Ohio. App.) (internal quotation marks omitted)). To thus be liable for an employee's incompetence, the employer must be able to anticipate the employee's misconduct and thereafter unreasonably take the risk to either hire him or continue his employment. *Jevack, supra*, 2007 WL 1461171, *5 (quoting *Collins v. Flowers*, 2006 WL 2527979, *5) ("Only where the employer could anticipate the misconduct, and the employer's taking the risk of it was unreasonable, will liability be imposed for any consequences.")

In this case, Johnson contends J.B. Hunt was negligent due to a Fleet Manager's "improper administration of random drug testing." [Doc. 1, at 6]. Johnson, however, does not allege the Fleet Manager's acts were "reasonably foreseeable," or, further, that J.B. Hunt had any reason to anticipate the Fleet Manager's alleged incompetence in supervising random drug testing. The facts stated in the complaint therefore, even if taken as true, do not state a cause of action. Johnson's claim of negligent hiring, supervision and retention is dismissed.

### 5. Defamation

Johnson also alleges J.B. Hunt defamed him. Defamation is a false publication causing injury to one's reputation. *Gosden v. Louis*, 116 Ohio App. 3d 195, 206 (1996). The elements of defamation

are: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff." *Id.* at 206. Truth, however is a "well-established" and complete defense to a defamation claim. *Scaccia v. Dayton Newspapers, Inc.*, 2009 WL 440948, *2 (Ohio App.) (citing O.R.C. § 2739.02).

In this case, Johnson alleges that J.B. Hunt defamed him by stating he was an "illegal drug user" and "drug screen violator." [Doc. 1, at 7]. The Federal Motor Carrier Safety Administration requires J.B. Hunt to conduct random drug testing of its employees who operate commercial motor vehicles and for those employees selected for random drug testing to report "immediately" to the testing facility. 49 C.F.R. 382.305(a), (l).

Johnson's complaint admits he violated a random drug screen by not reporting immediately to the testing center. Whether Johnson willfully violated the drug testing requirements is irrelevant. There is no dispute that Johnson did not comply with the federal regulations concerning random drug testing. Any statements made by J.B. Hunt concerning non-compliance with drug testing requirements are true, and thus not defamatory.

Johnson's allegation, however, that J.B. Hunt intentionally published information that he was an "illegal drug user," if taken as true, is defamatory. J.B. Hunt's motion to dismiss Johnson's complaint does not assert truth as a defense as to the "illegal drug user" allegation. I therefore deny J.B. Hunt's motion to dismiss Johnson's complaint as to the defamation cause of action.

### 6. Invasion of Privacy

Johnson alleges J.B. Hunt invaded his privacy. Ohio law recognizes four branches of invasion of privacy: 1) appropriation of one's name or likeness; 2) portrayal in a false light by publication of

11

private facts; 3) unreasonable publicity of one's private life; and 4) wrongful intrusion into one's private affairs. *Welling, supra*, 113 Ohio St. 3d at 468 (citing *Sustin v. Fee*, 69 Ohio St. 2d 143, 145 n.4 (1982)). Johnson alleges two privacy causes of action, claiming J.B. Hunt: 1) intruded into his private affairs; and 2) portrayed him in a false light by publication of private facts.

Wrongful intrusion is defined as invasion "into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person's ordinary sensibilities." *Poskocil v. Cleveland Inst. of Music*, 1997 WL 209265, *5 (Ohio App.) (citing *Housh v. Peth*, 135 Ohio St. 35, 39 (1956)).

Under the second theory of invasion of privacy, a defendant is liable for portraying a plaintiff in a false light by publication of private facts, if "(a) the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person, and (b) the [defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Welling, supra*, 113 Ohio St. 3d at 473.

J.B. Hunt does not allege Johnson intruded into his private activities. Rather, Johnson alleges that J.B. Hunt stated he was a "drug screen violator" and "illegal drug user." J.B. Hunt, however, is required by Federal Motor Carrier Safety Administration regulations to conduct random drug tests of its employees who operate commercial motor vehicles. 49 C.F.R. § 382.305. Once J.B. Hunt notified Johnson, he was therefore required under federal regulation, to "immediately" report to the testing site. 49 C.F.R. § 382.305(l). Johnson, therefore, does not state a claim for wrongful intrusion into his private affairs.

Here, if the statement that Johnson is an "illegal drug user" is not true, it is a portrayal in a false light that is highly offensive. J.B. Hunt, again, does not refute the claim that it notified others

12

that Johnson uses illegal drugs. I therefore deny defendant's motion to dismiss Johnson's complaint as to the invasion of privacy claim.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion to dismiss plaintiff's complaint [Doc. 6] be, and hereby is granted in part and denied in part as provided herein.

A scheduling conference is set for December 18, 2009 at 3:30 p.m.

So ordered

                                                s/James G. Carr
                                                James G. Carr
                                                Chief Judge