IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Steven Johnson,                                                    Case No. 3:09CV1352

                Plaintiff

      v.                                                                        ORDER

J.B. Hunt Transport, Inc.,

                Defendant

This is a tort case that arises out of defendant J.B. Hunt Transport, Inc. (J.B. Hunt)'s termination of plaintiff Steven Johnson from his employment. I previously partially granted defendant's motion to dismiss and dismissed four of his six claims [Doc. 14]. Plaintiff's defamation and invasion of privacy claims remain.

Pending is defendant's motion for summary judgment [Doc. 22]. For the following reasons, defendant's motion shall be granted in part and denied in part.

**Background**

Plaintiff was employed as a truck driver by defendant, a transport company, as an at-will employee for nine months prior to his termination.

Plaintiff attended a driver safety simulator in Columbus, Ohio, on Feburary 18, 2009. The events that transpired thereafter are in dispute.

Plaintiff testified that after finishing the simulator, he had to deliver a load to Circleville, Ohio. Plaintiff testified that his Fleet Manager, Greg McCorkle, told him "fine, go ahead, when you drop your trailer I need you to come back up to the service center and sign some papers." [Doc. 23, at 38]. When plaintiff arrived at Circleville, he contacted McCorkle to inform him about an issue he had in Circleville. At that point McCorkle told him that he was to go immediately to the Columbus Service Center (service center) by 4:00 P.M. Plaintiff was, however unable to make it to the service center by 4:00 P.M.

Plaintiff alleges that McCorkle informed him, while in Circleville, he was to have reported for the drug screen immediately on notification. After making the delivery, plaintiff reported to the testing facility and learned that it was closed for the evening. McCorkle then instructed him to report at 7:30 the next morning.

McCorkle, on the other hand, testified that after plaintiff completed the driver safety simulator, he instructed plaintiff to go to the service center for the random drug test immediately. When McCorkle realized that plaintiff did not go directly to the service center and was in Circleville, he called plaintiff to ask if he completed the drug test. Plaintiff then told McCorkle that he thought he was to complete the test after going to Circleville. McCorkle then informed plaintiff to return to the service center immediately.

It is undisputed that after completing the drug test the next morning, plaintiff picked up another load for delivery.

2

Defendant then contacted plaintiff while in transport and terminated him for failing to comply with drug testing requirements. The reported violation indicated that plaintiff's violation was due to "Test Refusal." [Doc. 31, at 30 – Ex. 7].

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

## A. Defamation

Plaintiff claims that defendant made certain defamatory statements regarding plaintiff's failure to take a drug test and that he was an "illegal drug user." Defendant argues that because plaintiff did not report immediately to test, defendant's publication concerning plaintiff's non-

compliance with Federal drug-testing requirements is not defamatory because the statement is true. Defendant also argues that plaintiff has no evidence to support the allegation that defendant referred to plaintiff as an "illegal drug user."

Defamation is a false publication causing injury to one's reputation. *Gosden v. Louis*, 116 Ohio App. 3d 195, 206 (1996). To prevail on a defamation claim, whether libel or slander, a plaintiff must prove the following elements: 1) a false statement; 2) about the plaintiff; 3) was published without privilege to a third party; 4) with fault of at least negligence on the part of the defendant; and 5) the statement was either defamatory per se or caused special harm to the plaintiff. *Id*. Truth is an absolute defense against a claim of defamation. *Shifflet v. Thomson Newspapers (Ohio), Inc.*, 69 Ohio St. 2d 179, 183 (1982).

Regulations promulgated by the Federal Motor Carrier Safety Administration (FMCSA) set forth certain requirements applicable to random drug screening commercial drivers requiring a commercial driver's license. 49 C.F.R. § 40.1(b). The regulations specifically require that "[e]ach employer shall require that each driver who is notified of selection for random alcohol and/or controlled substances testing proceeds to the test site immediately." 49 C.F.R. § 382.305(l).

The regulations also provide that an employee is considered to have refused a drug test where he "fail[s] to appear for any test  .   .   .  within a reasonable time, as determined by the employer, consistent with DOT regulations, after being directed to do so by the employer." 49 C.F.R. § 40.191(a)(1).

There can be no action or proceeding for defamation or invasion of privacy against a motor carrier or a person who provided such information, however this protection does not apply to persons who knowingly furnish false information. 49 C.F.R. § 391.23(l).

4

Defendant argues that because the regulation required plaintiff to report for testing immediately and he did not do so, the statement in the report that he refused a drug test is true, and thus not defamatory. Defendant also argues that the information published to the third party is privileged and therefore plaintiff's defamation claim must fail.

Plaintiff concedes that defendant has a qualified privilege to publish the information but argues that the privilege can be overcome by showing actual malice.[1] *See Smith v. Ameriflora 1992, Inc.*, 96 Ohio App. 3d 179, 185 (1994) (if statements are untrue and made with actual malice, then a defendant's claim of qualified immunity is defeated). Plaintiff has the burden of showing actual malice. *Evely v. Carlon Co., Div. of Indian Head, Inc.*, 4 Ohio St. 3d 163, 165 (1983).

I first turn the written statements in the HireRight Drug/Alcohol violation report [Doc. 31, at 30 – Ex. 7]. The document indicates that plaintiff's violation resulted from a "Test Refusal." The FMCSA regulations require the employee will be deemed to have refused a test if he fails to report for the test within a "*reasonable time*" as determined by the employer. 49 C.F.R. § 40.191(a)(1).

The parties dispute what happened the day plaintiff was to be tested. Plaintiff testified that he was told to first drop his truck load off in Circleville and then report to the service center.

McCorkle, on the other hand, testified that he instructed plaintiff to report *immediately* to the service center for the drug test, rather than dropping his load off in Circleville. There is no dispute that the service center was closed when plaintiff arrived back from Circleville and that McCorkle then told plaintiff to take the test immediately the next morning.

Plaintiff has presented sufficient evidence to enable a jury to find that the statement that he refused to take a drug test was false. Further, a jury could determine, based on the totality of the

---

[1] By not refuting defendant's assertion that communications, but for malice, were covered by qualified immunity, plaintiff has waived any right to assert such at a later date.

evidence presented, that the statement was made with malice. Therefore, whether the statement was untrue, and if untrue, was made maliciously, are questions of fact for a jury.

There remain genuine issues of material fact about what McCorkle told plaintiff, his mindset (malice or lack thereof) and whether plaintiff failed to report within a reasonable time.[2]

I now look to the alleged statement that defendant referred to plaintiff as an "illegal drug user." In his complaint, plaintiff claims that this defamatory statement damaged his character and reputation, which caused prospective employers to find plaintiff unhireable.

Plaintiff has not brought evidence that any such statement was published. As plaintiff has not met his burden under Rule 56, I must grant summary judgment to defendants on plaintiff's defamation claim to the extent it is based on a statement that plaintiff is an "illegal drug user."[3]

---

[2] Defendant also argues that I have already ruled on plaintiff's defamation claim as it relates to reporting plaintiff's refusal to test. There, I stated: "There is no dispute that Johnson did not comply with the federal regulations concerning random drug testing." [Doc. 14, at 11]. I stated that because plaintiff did not report immediately, "[a]ny statements made by J.B. Hunt concerning non-compliance with drug testing are true, and thus not defamatory." [*Id.*].

I, however, let plaintiff's claims for defamation and invasion of privacy survive the motion to dismiss stage and the facts and legal framework before me are now more developed than they were at that time.

The regulations provide that an employee must report immediately to the testing site. 49 C.F.R. § 382.305(l). The regulations, however, also state that an employee *refuses* a drug test if he or she does not report within a "reasonable time, as determined by the employer, consistent with DOT regulations, after being directed to do so by the employer." 49 C.F.R. § 40.191(a)(1).

Even if plaintiff did not report immediately, defendant cannot truthfully report that plaintiff *refused* the test unless he did not report within a reasonable time "as determined by the employer . . . after being so directed to do so by the employer." *Id.* As discussed above, there is a disputed issue of material fact about what plaintiff's employer told him about *when* he needed to report for the drug test. While a statement that plaintiff did not report *immediately*, is thus true, the truth of the statement that he *refused* the test – as that is defined by regulations – is disputed.

[3] Plaintiff, in its opposition to defendant's motion for summary judgment [Doc. 26], claims that the drug test refusal carries with it the innuendo that plaintiff is an illegal drug user. The statement arguably impliedly defames plaintiff by mentioning that he failed to take drug test, but "Ohio does not recognize libel through implied statements." *Osborn v. Knights of Columbus*, 401 F. Supp. 2d 822, 828 (citing *Krems v. Univ. Hosps. of Cleveland*, 133 Ohio App. 3d 6, 12 (1999)).

## II. Invasion of Privacy

Plaintiff also claims that defendant placed him in a false light by reporting that he refused to take a drug test and referring to him as an "illegal drug user." Defendant argues that because plaintiff did not follow the regulations and report immediately to service center, there can be no claim for invasion of privacy. Defendant also argues that plaintiff has no evidence that it ever called him an "illegal drug user."

Ohio law recognizes four branches of invasion of privacy: 1) appropriation of one's name or likeness; 2) portrayal in a false light by publication of private facts; 3) unreasonable publicity of one's private life; and 4) wrongful intrusion into one's private affairs. *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 468 (citing *Sustin v. Fee*, 69 Ohio St. 2d 143, 145 n.4 (1982)).

Only the false light claim survived the motion to dismiss.

In Ohio, "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy," if: 1) "the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person"; and 2) "the [defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Id.* at 467.

Defendant argues that because plaintiff did not comply with the regulations and did not *immediately* report to the drug screening upon notification, there can be no claim for invasion of privacy.[4] Plaintiff argues that because the reporting of the drug violation was false and the statements made by the defendant were malicious, summary judgment is inappropriate.

---

[4] Defendant also argues that in my order on its motion to dismiss, [Doc. 14], I limited the invasion of privacy on the basis of plaintiff's allegation that defendant stated that he was an "illegal drug user." As I state in Part I, *infra*, with regard to the defamation claim, this argument is not well taken.

7

As discussed above, there remains a genuine issue of material fact regarding whether defendant knowingly furnished false information concerning the drug test. Based on the totality of the evidence, a jury could find that defendant knowingly furnished the false information and thus portrayed plaintiff in a false light.

Finally, with regard to his defamation claim, plaintiff has not produced any evidence that defendant referred to him as an "illegal drug user." Therefore, summary judgment is granted as to plaintiff's invasion of privacy claim relating to that alleged communication.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendant's motion for summary judgment, [Doc. 22], be, and the same hereby is granted in part and denied in part as provided herein; and

2. The Clerk shall refer this case to United States Magistrate Judge Armstrong  to conduct forthwith an initial settlement conference at a date and time convenient for the Magistrate Judge, counsel and the parties.

 So ordered.

s/James G. Carr
U.S. District Judge